UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRAIG AND KRISTIE WUBBEN and TYSON BRUCE,   Case No.
MICHAEL R. THEILE,
ALEJANDRO and SHARRI SANTANA,
DANIEL L. JAMES,
JIM and CAROL GRIMPE,

      Plaintiffs,

vs.

RALPH KIRKLAND, an individual; KEN
FRANKLIN, JR, an individual; CC, LLC, a
Florida   limited   liability   company;
CONSOLIDATED CONVERSIONS, LLC, a
Florida limited liability company; LEGACY
GRAND HOLDINGS, LLC, a Florida limited
liability company; and, LEGACY GRAND
SALES AND SERVICE, LLC, a Florida limited
liability company,

      Defendants,

and

MARIAM W. FRANKLIN a/k/a MERIAM
WYOMME FRANKLIN, an individual; and,
THE MARIAM WYOMME FRANKLIN
REVOCABLE TRUST u/a/d August 3, 2011,

      Impleader Defendants.

_____/

## IMPLEADER COMPLAINT

Plaintiffs, Craig and Kristie Wubben, Tyson Bruce, Michael R. Theile, Alejandro

and Sharri Santana, Daniel L. James, Jim and Carol Grimpe (collectively, "Plaintiffs" or

"Creditors"), by and through undersigned counsel and pursuant to Fed. R. Civ. P.

69(a)(1) and Sec. 56.29, Fla. Stat., bring this their Impleader Complaint against Mariam

Wyomme Franklin a/k/a Meriam Wyomme Franklin ("Mariam") and The Mariam Wyomme Franklin Revocable Trust u/a/d August 3, 2011 ("Trust") and state as follows:

## INTRODUCTION

1.     This is an action in proceedings supplementary to unravel a string of fraudulent transfers undertaken by Kenneth W. Franklin, Jr. ("Franklin") to his wife, Mariam, in part, to render himself judgment proof before embarking on a speculative hotel plan in which he would be found by an arbitrator to have "engaged in deceptive practices, made material and misleading representations and omissions which…led to damage to [Plaintiffs]", and which were "motivated solely by unreasonable financial gain" (ECF No. 57-2, Award of Arbitrator).

2.     It is also an action to unravel those fraudulent transfers undertaken by Franklin specifically to avoid the claims of Plaintiffs, when the entry of a multi-million dollar arbitration award, and final judgment thereon, was imminent.

## GENERAL ALLEGATIONS

3.     In 2005, Franklin and his co-judgment debtor herein, Ralph Kirkland ("Kirkland"), conceived a plan to acquire a group of three hotels in the Orlando area with a view to converting them into "condo-hotels", where purchasers could acquire a hotel room as a condominium unit and have the unit managed for rental purposes when it was not being used by the purchaser ("Hotel Plan").

4.     Franklin had little to no hotel experience. In fact, prior to 2005, Franklin had been predominately engaged in the construction business – through his wholly-owned construction company, Franklin Development Corporation ("Construction Business") – and the restaurant business – through a number of different LLCs and sub-

2

LLCs ("Restaurant Businesses") that ran "Moe's Southwest Grill" and "Five Guys Burgers and Fries" restaurants.

5.      Notwithstanding their lack of hotel experience, Franklin and Kirkland put the Hotel Plan into action, and in 2005, Franklin and Kirkland created three LLCs to operate three separate hotels: the "Legacy Maingate", the "Legacy I-Drive", and the "Little Legacy", as follows:

(a)      in 2005, CC, LLC, acquired a hotel property known as Legacy Maingate;

(b)      in 2005, Savannah Hotel Associates, LLC acquired a hotel property known as Little Legacy; and,

(c)      in February 2006, Plaza Partners, LLC acquired a hotel property known as Legacy I-Drive.

6.      The Hotel Plan involved the financing of the LLCs' purchases of their respective hotels, including a $3,000,000 loan from CNL Income Properties, Inc. ("CNL") to purchase the Legacy Maingate, and a $16,800,000 loan from CNL to purchase the Legacy I-Drive.

7.      Importantly, for the purposes of this action, Franklin and Kirkland personally guaranteed millions and millions of dollars of various loans to the companies through which they implemented the Hotel Plan.

8.      Having guaranteed substantial loans related to the hotel development, Franklin started to transfer his interests in the Construction Business and the Restaurant Businesses that had been historically his, alone, from himself to himself and wife, Mariam Franklin, as tenants by the entireties, in an effort to shield assets from both his existing creditors, like CNL, and future creditors, like Plaintiffs, as follows:

(a) **The Raving Fans I Transfer**. Franklin had been the sole owner of a 41.66% membership interest in Raving Fans Restaurant Group I, LLC starting in 2003, before the Hotel Plan was implemented. On January 3, 2006 – less than six months after he had guaranteed the $3,000,000 loan from CNL, and one month before he would guarantee at least $8,000,000 of an additional $16,800,000 loan from CNL – Franklin transferred his 41.66% interest in Raving Fans Restaurant Group I, LLC from himself to himself and his wife, as tenants by the entireties.

(b) **The Raving Fans II Transfer**. Franklin had been the sole owner of a 50% membership interest in Raving Fans Restaurant Group II, LLC starting in 2003, before the Hotel Plan was implemented. On November 1, 2007 - after CNL had sued Franklin to enforce its personal guaranty against him - Franklin transferred his 50% interest in Raving Fans Restaurant Group II, LLC from himself to himself and his wife, as tenants by the entireties.

(c) **The Raving Fans III Transfer**. Franklin had been the sole owner of a 50% membership interest in Raving Fans Restaurant Group III, LLC when it was created in 2008. Immediately after it was created, on December 15, 2008 – just four months after he had been sued by Plaintiffs in this case – Franklin transferred his 50% interest in Raving Fans Restaurant Group III, LLC from himself to himself and his wife, as tenants by the entireties.

(d) **The Franklin Development Corp. Transfer and The Trust Transfer**. Franklin had been the sole shareholder of Franklin Development Corporation since 1990. On November 15, 2006 – after CNL had sued

4

Franklin to enforce its personal guaranty against him – Franklin transferred his two hundred shares of Franklin Development Corporation from himself to himself and his wife, as tenants by the entireties. (Franklin and Mariam then transferred those shares to The Mariam Wyomme Franklin Revocable Trust on August 5, 2011 – four months after the multi-million dollar Award of Arbitrator was entered and just a month before this Court would enter its Final Judgment confirming the multi-million dollar Award of Arbitrator.)

(e)   **The Moe's Transfer**. Franklin had been the sole owner of two hundred fifty shares of Moe's Southwest Grill Brandon, Inc. since its creation in 2005, and subsequently acquired twenty additional shares, bringing his ownership to two hundred seventy shares in Moe's Southwest Grill Brandon, Inc. On March 2, 2006, – six months before CNL threatened to declare a default on the Legacy I-Drive loan that Franklin had guaranteed – Franklin transferred his two hundred seventy shares of Moe's Southwest Grill Brandon, Inc. from himself to himself and his wife, as tenants by the entireties.[1]

("Transfers")

9.     Franklin's Construction Business and Restaurant Businesses generated hundreds of thousands of dollars of yearly income to Franklin prior to the Transfers; however, despite the high value of Franklin's interests in the businesses, Mariam paid nothing in exchange for the Transfers.

---

[1] Moe's Southwest Grill Brandon, Inc. was converted to an LLC in 2012, after the transfer, and this action seeks relief as to the converted entity, Moe's Southwest Grill Brandon, LLC.

10.     Meanwhile, in the midst of the Transfers, Franklin continued forward with the Hotel Plan, which included making intentionally fraudulent misrepresentations to Plaintiffs to induce them to invest in the Hotel Plan, and committing egregious violations of federal and state securities laws.

11.     By the time the Hotel Plan was revealed as the fraud that it was, resulting in the entry of a multi-million dollar arbitration award in favor of Creditors, Franklin had already rendered himself judgment proof by transferring assets that had been historically his, alone, to himself and his wife, as tenants by the entireties.

12.     In summary, something caused Franklin to transfer his Construction Business and Restaurant Businesses to his wife as tenants by the entireties; the facts establish that what motivated the Transfers was Franklin's actual intent to put these assets beyond the reach of his existing and future creditors.

13.     This is an action to avoid the Transfers and to: (a) impose a charging order on the membership interests in the LLCs despite their transfer to Mariam pursuant to Secs. 726.108(1)(c)3 and 608.433(4), Fla. Stat.; (b) levy on the stock of Franklin Development Corp. in the hands of the Trust pursuant to Sec. 726.108(2), Fla. Stat.; or, alternatively, (c) for a judgment against the intermediate and ultimate transferees, Mariam and the Trust, in the amount of the value of the transfers pursuant to Secs. 726.108(1)(a) and 726.109(2), Fla. Stat.

## PARTIES, JURISDICTION, AND VENUE

14.     Creditors hold a Final Judgment against Defendant, Franklin (ECF No. 81).

15.     Mariam is an individual and resides in the State of Florida.

16.     The Trust is a trust settled under the laws of the State of Florida under an agreement dated August 3, 2011.

17.     Venue is proper in this Court because venue for proceedings supplementary lies in the court which entered the final judgment.

**COUNT 1 –**
**§ 726.105(1)(a) –**
**TRANSFER ACTUALLY**
**FRAUDULENT AS TO FUTURE CREDITORS**
(Raving Fans I Transfer)

18.     The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

19.     At all times material hereto, Creditors were future creditors of Franklin under Sec. 726.105, Fla. Stat., insofar as they would hold "claims" against him within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the Award of Arbitration and Final Judgment thereon.

20.     This action is timely inasmuch as it is brought within one (1) year of the first date that the transfer alleged in this count could reasonably have been discovered by Creditors.

21.     Raving Fans Restaurant Group I, LLC ("Raving Fans I") is a Florida limited liability company.

22.     Prior to January 3, 2006, Franklin was the owner of a 41.66% interest in Raving Fans I.

23.     On January 3, 2006, Franklin transferred his interest in Raving Fans I from himself to himself and his wife, Mariam, as tenants by the entireties ("Raving Fans I Transfer"). A true and correct copy of the Assignment of Interest in Raving Fans

Restaurant Group I, LLC is attached hereto as Exhibit A.

24.    Franklin undertook the Raving Fans I Transfer with the actual intent to hinder, delay, and defraud his present and future creditors, as evidenced by the following:

(a)    the Raving Fans I Transfer was to Mariam, an "insider" in relation to Franklin;

(b)    the Raving Fans I Transfer was not disclosed in the public records of the Florida Secretary of State;

(c)    Franklin retained control over his membership interest in Raving Fans I;

(d)    the Raving Fans I Transfer was made after Franklin had personally guaranteed a $3,000,000 loan from CNL, and a month before he guaranteed at least $8,000,000 of a $16,800,000 loan from CNL;

(e)    Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Raving Fans I; rather, she paid no consideration at all for the exchange; and,

(f)    Franklin was insolvent at the time of the Raving Fans I Transfer, or was rendered insolvent as a result of the Raving Fans I Transfer and other transfers made substantially contemporaneously with the Raving Fans I Transfer.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Raving Fans I Transfer was actually fraudulent under Sec. 726.105(1)(a), Fla. Stat., and, at Creditors' election:

    i.    imposing a charging order on the transferred membership interests in Raving Fans I, despite their transfer to Mariam, pursuant to Sec. 608.433(4), Fla. Stat.; or,

    ii.    avoiding the Raving Fans I Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the interest in Raving Fans I at the time of the Raving Fans I Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

**COUNT 2 –**
**§ 726.105(1)(a) –**
**TRANSFER ACTUALLY**
**FRAUDULENT AS TO FUTURE CREDITORS**
(Raving Fans II Transfer)

25.    The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

26.    At all times material hereto, Creditors were future creditors of Franklin under Sec. 726.105, Fla. Stat. insofar as they would hold "claims" against him within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the Award of Arbitration and Final Judgment thereon.

27.    This action is timely inasmuch as it is brought within one (1) year of the first date that the transfer alleged in this count could reasonably have been discovered by Creditors.

28.    Raving Fans Restaurant Group II, LLC ("Raving Fans II") is a Florida

limited liability company.

29.     Prior to November 1, 2007, Franklin was the owner of a 50% interest in Raving Fans II.

30.     On November 1, 2007 Franklin transferred his interest in Raving Fans II from himself to himself and his wife, Mariam, as tenants by the entireties ("Raving Fans II Transfer"). A true and correct copy of the Assignment of Interest in Raving Fans Restaurant Group II, LLC is attached hereto as Exhibit B.

31.     Franklin undertook the Raving Fans II Transfer with the actual intent to hinder, delay, and defraud his present and future creditors, as evidenced by the following:

    (a)   the Raving Fans II Transfer was to Mariam, an "insider" in relation to Franklin;

    (b)   the Raving Fans II Transfer was not disclosed in the public records of the Florida Secretary of State;

    (c)   Franklin retained control over his membership interest in Raving Fans II;

    (d)   the Raving Fans II Transfer was made after Franklin had been sued by CNL on June 15, 2007 to enforce its personal guaranty against him;

    (e)   Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Raving Fans II; rather, she paid no consideration at all for the exchange; and,

    (f)   Franklin was insolvent at the time of the Raving Fans II Transfer, or was rendered insolvent as a result of the Raving Fans II Transfer and other transfers made substantially contemporaneously with the Raving Fans II Transfer.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Raving Fans II Transfer was actually fraudulent under Sec. 726.10591)(a) Fla. Stat., and, at Creditors' election:

     i.    imposing a charging order on the transferred membership interests in Raving Fans II, despite their transfer to Mariam, pursuant to Sec. 608.433(4), Fla. Stat.; or,

    ii.    avoiding the Raving Fans II Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the interest in Raving Fans II at the time of the Raving Fans II Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

**COUNT 3 –**
**§ 726.105(1)(a) –**
**TRANSFER ACTUALLY**
**<u>FRAUDULENT AS TO PRESENT CREDITORS</u>**
(Raving Fans III Transfer)

32.    The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

33.    At all times material hereto, Creditors were present creditors of Franklin within the meaning of Secs. 726.105, Fla. Stat., insofar as they held "claims" against him at the time of the transfer alleged herein within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the following:

    (a)    Craig and Kristie Wubben, Tyson Bruce, Michael R. Theile, Alejandro

and Sharri Santana, Daniel L. James, Jim and Carol Grimpe each held "claims" against Franklin as of the dates of their respective purchase and sale contracts dated May 22, 2007, August 14, 2007, July 2, 2007, May 29, 2007, July 23, 2007, and March 20, 2007, respectively; and,

(b)   Creditors held "claims" against Franklin as of the date of the suit filed herein on July 10, 2008.

34.   This action is timely inasmuch as it is brought within four (4) years of the date of the transfer alleged in this count.

35.   Raving Fans Restaurant Group III, LLC ("Raving Fans III") is a Florida limited liability company.

36.   Prior to December 15, 2008, Franklin was the owner of a 50% interest in Raving Fans III.

37.   On December 15, 2008, Franklin transferred his interest in Raving Fans III from himself to himself and his wife, Mariam, as tenants by the entireties ("Raving Fans III Transfer"). A true and correct copy of the Assignment of Interest in Raving Fans Restaurant Group III, LLC is attached hereto as Exhibit C.

38.   Franklin undertook the Raving Fans III Transfer with the actual intent to hinder, delay, and defraud Creditors as evidenced by the following:

(a)   the Raving Fans III Transfer was to Mariam, an "insider" in relation to Franklin;

(b)   the Raving Fans III Transfer was not disclosed in the public records of the Florida Secretary of State;

(c)   Franklin retained control over his membership interest in Raving Fans III;

(d)   the Raving Fans III Transfer was made shortly after Franklin was sued by Plaintiffs for securities law violations in July 2008;

(e)   Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Raving Fans III; rather, she paid no consideration at all for the exchange; and,

(f)   Franklin was insolvent at the time of the Raving Fans III Transfer, or was rendered insolvent as a result of the Raving Fans III Transfer and other transfers made substantially contemporaneously with the Raving Fans III Transfer.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Raving Fans III Transfer was actually fraudulent under Sec. 726.105(1)(a), Fla. Stat., and, at Creditors' election:

i.    imposing a charging order on the transferred membership interests in Raving Fans III, despite their transfer to Mariam, pursuant to Sec. 608.433(4), Fla. Stat.; or,

ii.   avoiding the Raving Fans III Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the interest in Raving Fans III at the time of the Raving Fans III Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

**COUNT 4 –**
**§ 726.105(1)(b) –**
**TRANSFER CONSTRUCTIVELY**
**FRAUDULENT AS TO PRESENT CREDITORS**
(Raving Fans III Transfer)

39.     The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

40.     At all times material hereto, Creditors were present creditors of Franklin within the meaning of Secs. 726.105, Fla. Stat., insofar as they held "claims" against him at the time of the transfer alleged herein within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the following:

(a)     Craig and Kristie Wubben, Tyson Bruce, Michael R. Theile, Alejandro and Sharri Santana, Daniel L. James, Jim and Carol Grimpe each held "claims" against Franklin as of the dates of their respective purchase and sale contracts dated May 22, 2007, August 14, 2007, July 2, 2007, May 29, 2007, July 23, 2007, and March 20, 2007, respectively; and,

(b)     Creditors held "claims" against Franklin as of the date of the suit filed herein on July 10, 2008.

41.     This action is timely inasmuch as it is brought within four (4) years of the date of the transfer alleged in this count.

42.     Prior to December 15, 2008, Franklin was the owner of a 50% interest in Raving Fans III.

43.     On December 15, 2008, Franklin transferred his interest in Raving Fans III from himself to himself and his wife, Mariam, as tenants by the entireties. A true and correct copy of the Assignment of Interest in Raving Fans Restaurant Group III, LLC is

14

attached hereto as Exhibit C.

44.     Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Raving Fans III; rather, she paid no consideration at all for the exchange.

45.     At the time of the Raving Fans III Transfer, Franklin was engaged in, or about to engage in, transactions for which his remaining assets were unreasonably small in relation to the transactions.

46.     At the time of the Raving Fans III Transfer, Franklin intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to pay them as they came due, including the debt to Plaintiffs.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Raving Fans III Transfer was constructively fraudulent under Sec. 726.105(1)(b), Fla. Stat., and, at Creditors' election:

    i.     imposing a charging order on the transferred membership interests in Raving Fans III, despite their transfer to Mariam, pursuant to Sec. 608.433(4), Fla. Stat.; or,

    ii.    avoiding the Raving Fans III Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the interest in Raving Fans III at the time of the Raving Fans III Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

## COUNT 5 –
## § 726.106(1) –
## TRANSFER CONSTRUCTIVELY
## FRAUDULENT AS TO PRESENT CREDITORS
(Raving Fans III Transfer)

47.    The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

48.    At all times material hereto, Creditors were present creditors of Franklin within the meaning of Secs. 726.106(1), Fla. Stat., insofar as they held "claims" against him at the time of the transfer alleged herein within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the following:

   (a)    Craig and Kristie Wubben, Tyson Bruce, Michael R. Theile, Alejandro and Sharri Santana, Daniel L. James, Jim and Carol Grimpe each held "claims" against Franklin as of the dates of their respective purchase and sale contracts dated May 22, 2007, August 14, 2007, July 2, 2007, May 29, 2007, July 23, 2007, and March 20, 2007, respectively; and,

   (b)    Creditors held "claims" against Franklin as of the date of the suit filed herein on July 10, 2008.

49.    This action is timely inasmuch as it is brought within four (4) years of the date of the transfer alleged in this count.

50.    Prior to December 15, 2008, Franklin was the owner of a 50% interest in Raving Fans III.

51.    On December 15, 2008, Franklin transferred his interest in Raving Fans III from himself to himself and his wife, Mariam, as tenants by the entireties. A true and correct copy of the Assignment of Interest in Raving Fans Restaurant Group III, LLC is

attached hereto as Exhibit C.

52.    Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Raving Fans III; rather, she paid no consideration at all for the exchange.

53.    At the time of the Raving Fans III Transfer, Franklin was insolvent or became insolvent as a result of the Raving Fans III Transfer.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Raving Fans III Transfer was constructively fraudulent under Sec. 726.106(1), Fla. Stat., and, at Creditors' election:

i.    imposing a charging order on the transferred membership interests in Raving Fans III, despite their transfer to Mariam, pursuant to Sec. 608.433(4), Fla. Stat.; or,

ii.    avoiding the Raving Fans III Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the interest in Raving Fans III at the time of the Raving Fans III Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

**COUNT 6 –**
**§ 726.105(1)(a) –**
**TRANSFER ACTUALLY**
**FRAUDULENT AS TO FUTURE CREDITORS**
(Franklin Development Corp. Transfer)

54.    The allegations set forth in Paragraphs 1 through 17 are restated and

reincorporated herein.

55.    At all times material hereto, Creditors were future creditors of Franklin under Sec. 726.105, Fla. Stat., insofar as they would hold "claims" against him within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the Award of Arbitration and Final Judgment thereon.

56.    This action is timely inasmuch as it is brought within one (1) year of the first date that the transfer alleged in this count could reasonably have been discovered by Creditors.

57.    Franklin Development Corp. ("Franklin Development") is a Florida corporation.

58.    Between 1990 and March 6, 2006, Franklin was the sole shareholder of Franklin Development by virtue of his ownership of 200 shares of the outstanding stock of Franklin Development.

59.    On November 15, 2006, Franklin transferred his 200 shares in Franklin Development from himself to himself and his wife, Mariam, as tenants by the entireties ("Franklin Development Transfer"). True and correct copies of Stock Certificate Nos. 1 and 3 effecting the Franklin Development Transfer are attached hereto as composite Exhibit D.

60.    Franklin undertook the Franklin Development Transfer with the actual intent to hinder, delay, and defraud his present and future creditors, as evidenced by the following:

(a)    the Franklin Development Transfer was to Mariam, an "insider" in relation to Franklin;

(b)   the Franklin Development Transfer was not disclosed in the public records of the Florida Secretary of State;

(c)   Franklin retained control over the operation of Franklin Development after the Franklin Development Transfer;

(d)   the Franklin Development Transfer was made at or near the time Franklin had been sued by CNL on June 15, 2007 to enforce its personal guaranty against him;

(e)   Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Franklin Development; rather, she paid no consideration at all for the exchange; and,

(f)   Franklin was insolvent at the time of the Franklin Development Transfer, or was rendered insolvent as a result of the Franklin Development Transfer and other transfers made substantially contemporaneously with the Franklin Development Transfer.

61.   Mariam is liable as an initial transferee of the Franklin Development Transfer under Sec. 726.109(2)(a), Fla. Stat.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Franklin Development Transfer was actually fraudulent under Sec. 726.105(1)(a), Fla. Stat., and avoiding the Franklin Development Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the stock at the time of the Franklin Development Transfer, plus prejudgment interest and the costs of

this action, and granting any other legal or equitable relief that the Court deems just and proper in the premises.

## COUNT 7 –
## § 726.105(1)(a) –
## TRANSFER ACTUALLY
## FRAUDULENT AS TO PRESENT CREDITORS
(The Trust Transfer)

62.     The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

63.     At all times material hereto, Creditors were present creditors of Franklin and Mariam at the time of the August 5, 2001 transfer alleged below within the meaning of Sec. 726.105, Fla. Stat., insofar as they held "claims" against Franklin and Mariam within the meaning of Sec. 726.102(3), Fla. Stat., for the fraudulent transfer of stock in Franklin Development Corp. as alleged in Count 6 hereof.

64.     This action is timely inasmuch as it is brought within four (4) years of the date of the transfer alleged in this count.

65.     After the Franklin Development Transfer alleged in Count 6 hereof, on August 5, 2011, Franklin and Mariam transferred 200 shares of the outstanding stock of Franklin Development to the Trust ("Trust Transfer").  A true and correct copy of Stock Certificate No. 4 effecting the Trust Transfer is attached hereto as Exhibit E.

66.     Franklin and Mariam undertook the Trust Transfer with the actual intent to hinder, delay, and defraud Plaintiffs, as evidenced by the following:

  (a)   the Trust Transfer was to the Trust, an "insider" in relation to Franklin;

  (b)   Franklin retained control over the operation of Franklin Development after the Trust Transfer;

(c)     the Trust Transfer was made four months after the multi-million dollar Award of Arbitrator was entered in April 2011, and just a month before that Award of Arbitrator was confirmed as a Final Judgment herein on September 9, 2011;

(d)     Franklin and Mariam did not receive, and the Trust did not pay, reasonably equivalent value in exchange for her interest in Franklin Development; rather, it paid no consideration at all for the exchange; and,

(e)     Franklin was insolvent at the time of the Trust Transfer, or was rendered insolvent as a result of the Trust Transfer and other transfers made substantially contemporaneously with the Trust Transfer.

67.     The Trust is liable as a subsequent transferee of the fraudulent transfer alleged in Count 6 hereof under Sec. 726.109(2)(b), Fla. Stat.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against the Trust finding that the Trust Transfer was actually fraudulent under Sec. 726.105(1)(a), Fla. Stat., and, at Creditors' election:

i.     permitting them to execute on the transferred interest in Franklin Development in the hands of the Trust, and awarding them the costs of this action; or,

ii.     avoiding the Trust Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against the Trust in an amount equal to the value of the interest in Franklin Development at the time of the Trust Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

**COUNT 8 –**
**§ 726.105(1)(b) –**
**TRANSFER CONSTRUCTIVELY**
**FRAUDULENT AS TO PRESENT CREDITORS**
(The Trust Transfer)

68.     The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

69.     At all times material hereto, Creditors were present creditors of Franklin and Mariam at the time of the August 5, 2001 transfer alleged below within the meaning of Sec. 726.105, Fla. Stat., insofar as they held "claims" against Franklin and Mariam within the meaning of Sec. 726.102(3), Fla. Stat., for the fraudulent transfer of stock in Franklin Development Corp. as alleged in Count 6 hereof.

70.     This action is timely inasmuch as it is brought within four (4) years of the date of the transfer alleged in this count.

71.     After the Franklin Development Transfer alleged in Count 6 hereof, on August 5, 2011, Franklin and Mariam transferred 200 shares of the outstanding stock of Franklin Development to the Trust. A true and correct copy of Stock Certificate No. 4 effecting the Trust Transfer is attached hereto as Exhibit E.

72.     Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for the Trust Transfer; rather, the Trust paid no consideration at all for the exchange.

73.     At the time of the Trust Transfer in December 2008, Franklin and Mariam were engaged in, or about to engage in, transactions for which their remaining assets

were unreasonably small in relation to the transactions.

74.     At the time of the Trust Transfer in December 2008, Franklin and Mariam intended to incur, or reasonably should have believed that they would incur, debts beyond their ability to pay them as they came due, including the debt owed to Creditors under the Award of Arbitrator dated April 28, 2011.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against the Trust finding that the Trust Transfer was actually fraudulent under Sec. 726.105(1)(b), Fla. Stat., and, at Creditors' election:

i.      permitting them to execute on the transferred interest in Franklin Development in the hands of the Trust, and awarding them the costs of this action; or,

ii.     avoiding the Trust Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against the Trust in an amount equal to the value of the interest in Franklin Development at the time of the Trust Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

## COUNT 9 –
### § 726.106(1) –
### TRANSFER CONSTRUCTIVELY
### FRAUDULENT AS TO PRESENT CREDITORS
(The Trust Transfer)

75.     The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

76.    At all times material hereto, Creditors were present creditors of Franklin and Mariam at the time of the August 5, 2001 transfer alleged below within the meaning of Sec. 726.106(1), Fla. Stat., insofar as they held "claims" against Franklin and Mariam within the meaning of Sec. 726.102(3), Fla. Stat., for the fraudulent transfer of stock in Franklin Development Corp. as alleged in Count 6 hereof.

77.    This action is timely inasmuch as it is brought within four (4) years of the date of the transfer alleged in this count.

78.    After the Franklin Development Transfer alleged in Count 6 hereof, on August 5, 2011, Franklin and Mariam transferred 200 shares of the outstanding stock of Franklin Development to the Trust.  A true and correct copy of Stock Certificate No. 4 effecting the Trust Transfer is attached hereto as Exhibit E.

79.    Franklin and Mariam did not receive, and the Trust did not pay, reasonably equivalent value in exchange for their interest in Franklin Development Corp.; rather, it paid no consideration at all for the exchange.

80.    At the time of the Trust Transfer, Franklin and Mariam were insolvent or became insolvent as a result of the transfer or obligation.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against the Trust finding that the Trust Transfer was constructively fraudulent under Sec. 726.106(1), Fla. Stat., and, at Creditors' election:

     i.    permitting them to execute on the transferred interest in Franklin Development Corp. in the hands of the Trust, and awarding them the costs of this action; or,

ii.   avoiding the Trust Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against the Trust in an amount equal to the value of the interest in Franklin Development Corp. at the time of the Trust Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

**COUNT 10 –**
**§ 726.105(1)(a) –**
**TRANSFER ACTUALLY**
**FRAUDULENT AS TO FUTURE CREDITORS**
(The Moe's Transfer)

81.   The allegations set forth in Paragraphs 1 through 17 are restated and reincorporated herein.

82.   At all times material hereto, Creditors were future creditors of Franklin under Sec. 726.105, Fla. Stat., insofar as they would hold "claims" against him within the meaning of Sec. 726.102(3), Fla. Stat., by virtue of the Award of Arbitration and Final Judgment thereon.

83.   This action is timely inasmuch as it is brought within one (1) year of the first date that the transfer alleged in this count could reasonably have been discovered by Creditors.

84.   Moe's Southwest Grill Brandon, Inc. is an inactive Florida corporation that was converted in 2012 to a Florida limited liability company known as Moe's Southwest Grill, Brandon, LLC ("Moe's Brandon").

85.   Prior to March 2, 2006, Franklin was the owner of 270 shares of the

outstanding stock of Moe's Brandon.

86.     On March 2, 2006, Franklin transferred stock in Moe's Brandon from himself to himself and his wife, Mariam, as tenants by the entireties ("Moe's Brandon Transfer"). A true and correct copy of the "Assignment Agreement" effecting the Moe's Brandon Transfer is attached hereto as Exhibit F.

87.     Franklin undertook the Moe's Brandon Transfer with the actual intent to hinder, delay, and defraud his present and future creditors, as evidenced by the following:

(a)     the Moe's Brandon Transfer was to Mariam, an "insider" in relation to Franklin;

(b)     the Moe's Brandon Transfer was not disclosed in the public records of the Florida Secretary of State;

(c)     Franklin retained control over his membership interest in Moe's Brandon after the Moe's Brandon Transfer;

(d)     the Moe's Brandon Transfer was made at or near the time CNL had threatened a default on the Legacy I-Drive loan that Franklin had guaranteed on October 1, 2006;

(e)     Franklin did not receive, and Mariam did not pay, reasonably equivalent value in exchange for her interest in Moe's Brandon; rather, she paid no consideration at all for the exchange;

(f)     Franklin was insolvent at the time of the Moe's Brandon Transfer, or was rendered insolvent as a result of the Moe's Brandon Transfer and other transfers made substantially contemporaneously with the Moe's Brandon Transfer.

WHEREFORE Creditors respectfully request that the Court enter judgment in their favor and against Mariam finding that the Moe's Brandon Transfer was actually fraudulent under Sec. 726.105(1)(a), Fla. Stat., and, at Creditors' election:

i.    imposing a charging order on the transferred membership interests in Moe's Brandon, despite their transfer to Mariam, pursuant to Sec. 608.433(4), Fla. Stat.; or,

ii.   avoiding the Moe's Brandon Transfer within the meaning of Secs. 726.108(1)(a) and 726.109(2), Fla. Stat., and entering a judgment against Mariam in an amount equal to the value of the stock at the time of the Moe's Brandon Transfer, plus prejudgment interest and the costs of this action; and,

granting any other legal or equitable relief that the Court deems just and proper in the premises.

CHAD K. ALVARO
Florida Bar Number 621412
KURT E. THALWITZER
Florida Bar Number 816299
MATEER & HARBERT, P.A.
225 East Robinson Street, Suite 600
Post Office Box 2854
Orlando, Florida 32802
Telephone: (407) 425-9044
Facsimile: (407) 423-2016
Attorney for Judgment Creditors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be sent for service in accordance with the Federal Rules of Civil Procedure, along with a copy of Plaintiffs' Motion for Proceedings Supplementary to Execution and Impleader of Third Parties and Memorandum of Law in Support, the order thereon, and summonses, for personal service on Mariam W. Franklin and the Mariam Wyomme Franklin Revocable Trust.

CHAD K. ALVARO
Florida Bar Number 621412
MATEER & HARBERT, P.A.
Attorney for Judgment Creditors

4845-6035-8416, v.  1